```
                                              ╔═══════════════════════════════╗
                                              ║ USDC SDNY                     ║
UNITED STATES DISTRICT COURT                  ║ DOCUMENT                      ║
SOUTHERN DISTRICT OF NEW YORK                 ║ ELECTRONICALLY FILED          ║
-----------------------------------------X    ║ DOC #:                        ║
JESUS SANCHEZ,                           :    ║ DATE FILED: 6/22/07           ║
                                         :    ╚═══════════════════════════════╝
                       Petitioner,       :
                                         :
        -against-                        :    04 Civ. 4363 (RMB)(RLE)
                                         :
WILLIAM PHILLIPS, Superintendent of      :    DECISION AND ORDER
Green Haven Correctional Facility,       :
                                         :
                       Respondent.       :
-----------------------------------------X
```

**I.      Background**

On or about May 3, 2004, Jesus Sanchez ("Petitioner" or "Sanchez"), appearing pro se,

filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Petition") against

William Phillips, Superintendent of the Green Haven Correctional Facility ("Respondent" or

"Phillips"), challenging his conviction (following a jury trial before the Honorable John Moore

in New York State Supreme Court, Bronx County) of kidnapping in the second degree in

violation of New York Penal Law § 135.20 and criminal possession of a weapon in the second

degree in violation of New York Penal Law § 265.03. (See Petition ¶¶ 3, 5.) On June 15, 2000,

Petitioner was sentenced to concurrent indeterminate terms of twelve and one-half to twenty-five

years and seven and one-half to fifteen years, respectively. (Id. ¶ 4.)[1]

---

[1]      In June of 2002, Petitioner appealed his conviction to the New York State Supreme
Court, Appellate Division, First Department, asserting the same three claims included in the
Petition. (Appellant's Brief, dated June 2002.) On February 20, 2003, the Appellate Division
affirmed Petitioner's conviction, finding, among other things, that: (1) while the "tape recording
of the [911] call was improperly admitted under the present sense exception to the hearsay rule, .
. . the error was harmless," and Sanchez's "claim that his right of confrontation was violated by
the admission of the tape [was] unpreserved"; (2) "[t]he challenged portions of the prosecutor's
summation did not deprive defendant of a fair trial" because, among other reasons, the trial
court's "prompt curative instructions prevented any prejudice"; and (3) the prosecutor's assertion
that she had challenged two black jurors because they were from Soundview in the Bronx was
"not pretextual," and her concern was "genuine" and "particularized" and "not based on race."

Petitioner argues, as he did before the Appellate Division, First Department, that the trial court erred by, among other things: (1) "admitting as a present sense impression a 911 tape in which a caller described an incident that had occurred at least fifteen minutes earlier" ("911 Call Claim"); (2) failing to sustain defense objections to the "prosecutor's numerous summation errors, including vouching, reliance on religion, attacks on defense counsel's sincerity, forays outside the four corners of the evidence, and appeals for sympathy" ("Summation Claim"); and (3) "accepting as nonpretextual the prosecutor's claim that she had excluded two African-American prospective jurors because they lived in the Soundview neighborhood in the Bronx" ("Batson Claim"). (Pet. ¶ 13.)

On or about April 10, 2007, Magistrate Judge Ronald L. Ellis, to whom the matter had been referred, issued a Report and Recommendation ("Report"), recommending that the Court grant the Petition. (See Report at 1.) While Judge Ellis recommended denial of the 911 Call Claim because, among other reasons, "the admission of the 911 call . . . did not violate Sanchez's due process rights," as its admission amounted to "harmless error" (id. at 20), and denial of the Summation Claim because, among other reasons, "the prosecutor's summation did not render the trial fundamentally unfair" (id. at 22), Judge Ellis also concluded that the Petition be granted as to the Batson Claim because, among other reasons, Petitioner "provided clear and convincing evidence that the prosecutor's reason for challenging the Soundview jurors was pretextual" (id. at 19).

On or about April 19, 2007, Petitioner, now represented by counsel, submitted timely objections to the Report, arguing that, among other things: (1) the trial court's error in admitting

---

People v. Sanchez, 302 A.D.2d 282, 282-83, 754 N.Y.S.2d 639, 640-41 (1st Dep't 2003).  On May 16, 2003, the New York Court of Appeals denied Petitioner's application for leave to appeal.  People v. Sanchez, 100 N.Y.2d 542, 763 N.Y.S.2d 8 (2003).

the 911 Call was not "harmless"; and (2) "the prosecutor's [summation] so infected the trial with unfairness as to make the resulting conviction a denial of due process." (Petitioner's Objections, dated April 19, 2007 ("Pet. Obj."), at 7-9.) On May 15, 2007, Respondent submitted timely objections to the Report, arguing that, among other things, because "the trial court's decision to credit the prosecutor [with respect to peremptory jury challenges] was not unreasonable, . . . the petition cannot be granted." (Respondent's Objections, dated May 15, 2007 ("Resp. Obj."), at 14.) Neither Petitioner nor Respondent filed responses to the respective Objections of the other party.

**For the reasons stated below, the Report is adopted in part and rejected in part in that the Court adopts so much of the Report as recommends denial of Petitioner's 911 Call Claim and Summation Claim and rejects so much of the Report as recommends granting Petitioner's Batson Claim.**

## II.    Standard of Review

The Court "shall make a de novo determination of those portions of the report or specified findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); see also Fed. R. Civ. P. 72(b); Grassia v. Scully, 892 F.2d 16, 19 (2d Cir. 1989). As to any portions of a magistrate judge's report to which no objections have been made, the district judge may adopt all findings that are not clearly erroneous. See Thomas v. Arn, 474 U.S. 140, 149 (1985).

## III.    Analysis

The facts as set forth in the Report are incorporated herein by reference. The Court has conducted a de novo review of, among other things, the Petition, all recommendations in the

Report, Petitioner's Objections, Respondent's Objections, the record, and applicable legal authorities. See Pizzaro v. Bartlett, 776 F. Supp. 815, 817 (S.D.N.Y. 1991). The parties raise substantially the same arguments that were raised before Judge Ellis and, with the exception of the Batson Claim, do not provide a basis for departing from the Report's conclusions and recommendations.[2]

    **(1)    911 Call**

Judge Ellis correctly found that the trial court's "admission of the 911 tape as a present sense impression," while erroneous, did not violate Petitioner's due process rights because the error was "harmless." (Report at 19.) "The introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence is so extremely unfair that its admission violates fundamental conceptions of justice." Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998) (internal quotations and citation omitted). "[T]he item must have been 'sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" Id. (citation omitted).

Judge Ellis correctly found that "[w]hile the 911 call obviously bolstered the jury's assessment of the evidence, it was not crucial, critical, highly significant to the conviction," as the "911 call itself did not identify Sanchez, but instead corroborated the circumstances." (Report at 20 (citations and internal quotation marks omitted).) He also confirmed that "[t]wo other witnesses had described the events" and "[t]he weapon was recovered at the scene." (Id.)

Judge Ellis also correctly found that Petitioner's claim that admission of the 911 call violated his Sixth Amendment rights was "procedurally barred because the Appellate Division

---

[2] As to any portion of the Report to which no objections have been made, the Court concludes that the Report is not clearly erroneous. See Pizzaro, 776 F. Supp. at 817. Any objections not specifically addressed in this Decision and Order have been considered de novo and rejected.

-4-

found the claim unpreserved." (Report at 20.) <u>See</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991). Judge Ellis properly found that "Sanchez has not presented evidence of any external objective factor which prevented him from preserving this claim for appellate review[,] . . . cannot show prejudice," and "has raised no new evidence of actual innocence that would demonstrate a fundamental miscarriage of justice." (Report at 21.)

### (2)    Summation

Judge Ellis correctly found that the prosecutor's summation did not "deprive[] [Petitioner] of his right to a fair trial and his rights of confrontation under the Sixth Amendment." (Report at 21.) "[I]t 'is not enough that the prosecutors' remarks were undesirable or even universally condemned.' . . . The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986) (citations omitted). Here, "the prosecution's summation did not render the trial fundamentally unfair, particularly because the trial court instructed the jury to disregard some of [the Prosecutor's] comments in addition to the usual instruction that counsels' arguments are not evidence." (Report at 22.) "A jury is presumed to follow [the court's] instructions." <u>Weeks v. Angelone</u>, 528 U.S. 225, 234 (2000).

### (3)    Batson Claim

This Court disagrees with Judge Ellis's conclusion that the "trial court's determination that the prosecutor's reasons [for challenging the two jurors] were not pretextual was objectively unreasonable in light of the entire state court proceeding." (Report at 11-12.) Judge Ellis also determined, among other things, that the Prosecutor's challenge to "five out of seven black jurors . . . raised an inference of discrimination"; "there was no connection between the Diallo verdict and Sanchez's case"; and although, at the beginning of the second day of <u>voir dire</u>, "the

prosecutor expressed concern" regarding the Diallo street protests, the "prosecutor did not

mention any specific concern about the community of Soundview." (Report at 12-19.)

In its Objections, Respondent argues persuasively that, among other things: it is

"reasonable to conclude that those [jurors] connected with the geographic location [i.e.,

Soundview] of the actual Diallo killing would be averse to the prosecution [in the Bronx] in a

degree greater than that of the average New Yorker"; "although [Magistrate Judge Ellis] faults

the prosecutor for not expressly referring to Soundview at the onset of the first court day after

the Diallo verdict (Report, p. 13), this is certainly reasonable since she yet had no idea that

anyone from that neighborhood was on the venire"; "it is not the prosecutor's burden to make . . .

a record," but rather the burden is "on the petitioner to establish that [the Prosecutor's] reasons

were pretextual"; and "there is no indication that Soundview is anything other than a diverse

neighborhood." (Resp. Obj. at 4-14.)

As noted, the Court concludes that the Magistrate Judge erred in concluding that it was

unreasonable to credit the prosecutor's race-neutral explanations for her Batson challenges.

"A defendant's Batson challenge to a peremptory strike requires a three-step inquiry."

Rice v. Collins, 546 U.S. 333, 126 S. Ct. 969, 973 (2006).

> First, the trial court must determine whether the defendant has made a prima facie
> showing that the prosecutor exercised a peremptory challenge on the basis of race.
> Second, if the showing is made, the burden shifts to the prosecutor to present a
> race-neutral explanation for striking the juror in question . . . . Third, the court must then
> determine whether the defendant has carried his burden of proving purposeful
> discrimination. This final step involves evaluating the persuasiveness of the justification
> proffered by the prosecutor, but the ultimate burden of persuasion regarding racial
> motivation rests with, and never shifts from, the opponent of the strike.

Id., 126 S. Ct. at 973-74 (citations and internal quotation marks omitted).

Here, it is undisputed that the trial court properly followed Batson steps one and two in

that the Petitioner made a prima facie showing of discrimination (see Transcript at 148-49 (the

challenged jurors were African-American)), and the Prosecutor presented a race-neutral explanation for striking the jurors by raising the connection between community dissatisfaction with the Diallo trial and residence in Soundview (see Transcript at 149 ("I feel that [the juror] living in [Soundview] and being exposed to [protests] on a daily basis would effect [sic] her being a juror in this case . . . .")).  The only dispute relates to the third Batson step, i.e., whether the trial court erred in finding that Petitioner had failed to "carr[y] his burden of proving purposeful discrimination." Rice, 126 S. Ct. at 974.[3]

The "credibility of the prosecutor's explanation goes to the heart of the [Batson third-step] equal protection analysis, and once that has been settled, there seems nothing left to review." Hernandez v. New York, 500 U.S. 352, 367 (1991).  Because credibility is a fact question, "a federal habeas court can only grant [a habeas] petition if it was unreasonable to credit the prosecutor's race-neutral explanations for the Batson challenge.  State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'" Rice, 126 S. Ct. at 974 (citing 28 U.S.C. §§ 2254(d)(2), 2254(e)(1)); id. at 975 (it is the petitioner's burden to establish "that a reasonable factfinder must conclude the prosecutor lied" in providing his or her reasons for exercising the strike); accord Channer v. Brooks, 320 F.3d 188, 195-96 (2d Cir. 2003).  "[E]ven if '[r]easonable minds reviewing the record might disagree about the prosecutor's credibility,' it is inappropriate on habeas review 'to supersede the trial court's credibility determination.'" Messiah v. Duncan,

---

[3] (See Transcript at 149-51 (Trial Court: "Those demonstrations have also indicated that the particular area [i.e., Soundview] that there are some residents that are not happy with the New York City Police Department to say the least. . . . [I]t is a location where, obviously, a case was removed from Bronx County, based on trial publicity by the Appellate Courts because they felt a fair jury could not be selected from the community of the Bronx to sit in the Diallo case.  This juror lives in the Soundview section where the crime occurred.  I believe all things being equal that this is a racially neutral reason to exclude the juror.").)

435 F.3d 186, 200 (2d Cir. 2006) (quoting Rice, 126 S. Ct. at 976); see id. at 196 (courts must

"afford 'great deference' to the state court's credibility assessment of [the] prosecutor's proffered

race-neutral explanation for striking a juror"). "Credibility can be measured by, among other

factors, the prosecutor's demeanor; by how reasonable, or how improbable, the explanations are;

and by whether the proffered rationale has some basis in accepted trial strategy." Miller-El v.

Cockrell, 537 U.S. 322, 339 (2003).

Petitioner has not provided "clear and convincing" evidence to overrule the trial court,

i.e., to "demonstrate [ ] that a reasonable factfinder must conclude the prosecutor lied about" his

reasons for striking the two jurors. Rice, 126 S. Ct. at 975-76. First, "the best [credibility]

evidence often will be the demeanor of the attorney who exercises the challenge. As with the

state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and

credibility lies 'peculiarly within a trial judge's province.'" Hernandez, 500 U.S. at 365 (citation

omitted); accord DeBerry v. Portuondo, 403 F.3d 57, 68 (2d Cir.), cert. denied, 126 S. Ct. 225

(2005).

Second, the Prosecutor's explanation that she believed that residents of Soundview were

at the center of the Diallo verdict "storm" and might have harbored strong feelings against the

Bronx District Attorney's Office and/or the New York Police Department appears reasonable

(even if there is a plausible other explanation). See Tr. at 150-51 (COURT: "Those

demonstrations have also indicated that the particular area that there are some residents that are

not happy with the New York City Police Department to say the least."). Moreover, the

Prosecutor raised the Diallo issue at the beginning of voir dire, before she learned that the venire

panel contained Soundview residents. (Tr. at 4-7.) And, the Prosecutor's contemporaneous

written notes -- recording the excluded jurors' Soundview connections -- support the Prosecutor's

-8-

concern with Soundview residents and were not a pretextual after-the-fact justification (see

Affidavit of Nancy D. Killian, Ex. 3: Prosecutor's contemporaneous notes). See also Brown v.

Kelly, 973 F.2d 116, 121 (2d Cir. 1992) (advising prosecutors to "make contemporaneous notes"

of voir dire).

Third, "[t]he prosecutor's explanations for his peremptory challenges" had a strong basis

in the "accepted trial strategy of selecting jurors who are able to impartially consider evidence at

trial." Palmer v. Greiner, No. 00 Civ. 6677, 2003 WL 22019740, at *7 (S.D.N.Y. Aug. 22,

2003); see also Majid v. Portuondo, 428 F.3d 112, 131 (2d Cir. 2005), cert. denied, 127 S. Ct.

151 (2006).

Nor is it dispositive that the challenged jurors claimed to be impartial. See Rice, 126 S.

Ct. at 975 (affirming peremptory challenges to jurors even though the jurors claimed they could

be "impartial").

In addition to these credibility factors, the Petitioner failed to establish by clear and

convincing evidence that the Prosecutor employed residence in Soundview as a "proxy" for race.

Indeed, Petitioner offered no evidence that Soundview contains primarily African-American

residents, and "the government's explanation for its strike went well beyond a cursory statement

that [the excluded jurors] resided" in Soundview. U.S. v. Briscoe, 896 F.2d 1476, 1488-89 (7th

Cir. 1990); see U.S. v. Russell, 125 F.3d 845 (Unpublished), 1997 WL 624997, at *2 (2d Cir.

Oct. 9, 1997) (the argument that the "government used place of residence as a proxy for race"

was rejected "for several reasons, the most relevant being that only about 37% [of residents of]

the Bronx are black"); see also Forrest v. Beloit Corp., 424 F.3d 344, 351 (3d Cir. 2005); Boyde

v. Brown, 404 F.3d 1159, 1170-72 (9th Cir. 2005); Richards v. Relentless, Inc., 341 F.3d 35, 45

(1st Cir. 2003).

Accordingly, the Court finds that the trial court did not act unreasonably in crediting the Prosecutor's proffered reasons for her peremptory strikes, and the Court denies habeas relief on Petitioner's <u>Batson</u> Claim.

**IV.     Certificate of Appealability**

Because Petitioner has not made a "substantial showing of the denial of a constitutional right," the Court will not grant a certificate of appealability.  28 U.S.C. § 2253(c)(2); <u>see also</u> <u>Lucidore v. N.Y. State Div. of Parole</u>, 209 F.3d 107, 112 (2d Cir. 2000).

**V.     Conclusion and Order**

For the reasons stated herein, the Report is adopted in part and rejected in part and the Petition is denied.  The Clerk of the Court is respectfully requested to close this case.

Dated: New York, New York
      June 22, 2007

**RICHARD M. BERMAN, U.S.D.J.**

-10-